**George DOBROVICH and Judith Dobrovich, Plaintiffs,**

v.

**Albert K. HOTCHKISS & A.K. Hotchkiss, Inc., Defendants.**

**No. 3:98 CV 344(GLG).**

United States District Court, D. Connecticut.

July 27, 1998.

Ralph J. Mellusi, Tabak & Mellusi, New York City, George D'Amico, Miller, Rosnick, D'Amico & De Lucia, P.C., Bridgeport, CT, for Plaintiffs.

Richard A. Roberts, Kerry E. Knobelsdorff, Nuzzo & Roberts, L.L.C., Cheshire, CT, for Defendants.

## *OPINION*

GOETTEL, District Judge.

The defendants move to dismiss this action bought in admiralty for lack of subject matter jurisdiction.[1] Fed.R.Civ.P. 12(b)(1). The plaintiff, George Dobrovich, was Captain of a vessel known as the John E. Pfriem which was owned and operated by his employer, the Aquaculture Foundation. On May 5, 1995, the date of injury, the vessel was being outfitted, repaired and made ready for scheduled voyages. (The voyages were daily excursions which brought the vessel back to the property at the end of the day). While coming down a ramp, as will be more fully described hereafter, the plaintiff slipped and fell, sustaining substantial injuries.

Following the accident, the employer, Aquaculture, filed an action in admiralty seeking limitation of liability. *In re Aquaculture,* No. 3:96CV0865(GLG) (D.Conn.). The plaintiff filed Jones Act seamen's claims in that proceeding. A second action was commenced by these plaintiffs against. Leslie Hamel, the owner of the property. *Dobrovich v. Hamel,* No. 3:97CV0467(GLG) (D.Conn.). She had acquired the property two years prior to the accident from her father, the defendant in this case, Albert K. Hotchkiss.[2] Despite the transfer of title, Mr. Hotchkiss continued to reside on the property and conduct his marine construction business from that location. His company, A.K. Hotchkiss, Inc., also a defendant herein, was incorporated some 30 years ago, and it appears that the ramp on which the accident took place was designed, constructed, and maintained by these defendants (which is the basis of the plaintiff's claims against them for negligence, breach of warranty and product liability).[3] The sole basis for federal jurisdic-

---

1. Two other motions have been filed. However, the Court must first establish its jurisdiction before ruling on those two motions. Since we grant the motion to dismiss, those motions become moot.

2. This transfer was purportedly part of estate planning.

3. Plaintiff Judith Dobrovich's claim is for loss of consortium.

tion is allegedly in admiralty.[4]

The John E. Pfriem had used the Hotchkiss/Hamel property as its base of operations for many years, apparently without charge. They had permission to moor, outfit and repair their vessel as well as, of course, access to the vessel from the property. The property has a bulkhead on its waterfront side. The ramp there led down to a series of floating docks. It is then necessary to traverse the floating docks in order to reach the vessel. There is a dispute between the parties as to how long a distance had to be travelled over the floating docks, with the plaintiffs' maintaining it was only some 25–50 feet and the defendants' claiming it to be further.[5] The plaintiffs contend that the ramp was equivalent to a ship's "gangway," as that term is understood in maritime law, and, consequently, there is admiralty jurisdiction. The defendants claim that, since the ramp was permanently affixed to land and led not to the vessel but to a dock, there is no admiralty jurisdiction.[6]

The floating docks (and there are perhaps five or six of them) are moveable and can be configured in different fashions. Indeed, in the winter when the water freezes, the floating docks are entirely removed and the ramp is raised into a horizontal position.

As a general proposition, the admiralty courts have found that a ship's gangway is the dividing line which separates sea based claims from land based claims. Usually, however, docks, piers, and other permanent attachments to the land are considered extensions of the land and, therefore, injuries occurring on them, unless caused by the vessel, do not fall within admiralty jurisdiction.

■ For a tort claim to be within the federal court's admiralty jurisdiction, the accident must have occurred on navigable waters (the "situs" or "locality" test) and must bear a significant relationship to traditional

maritime activity. *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 268, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); *Sisson v. Ruby,* 497 U.S. 358, 364, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990); *Foremost Insurance Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); *Keene Corp. v. United States,* 700 F.2d 836, 843 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). An injury suffered on land can fall under the Admiralty Extension Act of 1948, 46 U.S.C.App. § 740, if the injury is caused by a vessel. *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 210–211, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971). When it is the ship's gangway that is defective, it can be said that the vessel has caused the injuries even though the plaintiff has never reached the vessel. On the other hand, it is clear that structures such as piers and docks permanently affixed to land are extensions of the land and are not navigational vessels. *Michigan Mutual Liability Co. v. Arrien,* 344 F.2d 640 (2d Cir.), *cert. denied,* 382 U.S. 835, 86 S.Ct. 80, 15 L.Ed.2d 78 (1965). This is true even when the pier or dock extends onto or over navigable waters. *Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352, 360, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969).

■ The issue before this Court is whether a ramp leading to *floating* docks, which must be traversed to reach the location where the ship is moored, should not be considered as an extension of land since the docks are moveable. Counsel have not cited, and we have not found, any case having the exact facts presented here. However, there are other analogous cases which lead us to conclude that a ramp giving access to a dock, albeit a floating one, is not the equivalent of a ship's gangway.

■ Floating docks are for legal purposes similar to a floating dry dock. Floating dry docks are mobile and can be towed across navigable waters. However, they are

---

4. There may be other bases for jurisdiction in the other actions.

5. The actual distance could vary somewhat depending upon the precise point at which the vessel was moored to the floating dock. We do not consider the amount of distance involved to be a material issue.

6. Defendants state that the ramp is permanently affixed to the bulkhead. Plaintiffs contend that it is hinged so that it can rise and fall with the tides and so that it can be raised and lowered, and that it could be disconnected and removed completely. We find this issue to be irrelevant.

not considered within admiralty jurisdiction if they are more or less permanently affixed to the shore, since they are not travelling along navigable waters. *J.M.L. Trading Corp. v. Marine Salvage Corp.*, 501 F.Supp. 323, 324–25 (E.D.N.Y.1980). Moreover, where the access ramp is permanently affixed to the land, even though it has direct connection to a vessel, a slip on such a ramp is not viewed as being within admiralty jurisdiction.

For example, in *Parker v. South Louisiana Contractors, Inc.*, 537 F.2d 113 (5th Cir. 1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977), the plaintiff had transported a truck by barge to a landing on the opposite side of a river. He left the truck on the barge and went ashore to survey the situation. Returning to the barge, he walked over a heavy ramp which rested on land and had an apron extending over the water's edge, which could be raised or lowered by winches to permit access to barges docking at that point. While walking on the ramp, he slipped in a gap which ran longitudinally along the center of the ramp and suffered severe injuries. In holding that the case was not within admiralty jurisdiction, the Fifth Circuit, noted that removing the ramp was a major undertaking and it was not seen as being an appurtenance of the barges that used it for docking. *Id.* at 116. Consequently, it was viewed as a land based structure resembling a dock or pier and therefore not within admiralty jurisdiction.

In *Feehan v. United States Lines, Inc.*, 522 F.Supp. 811 (S.D.N.Y.1980), the plaintiff's decedent was struck and killed by a specialized motor vehicle used to unload ships' cargo, while he was walking on a pier where his ship was docked. The Court considered whether the Admiralty Extension Act [7] might confer jurisdiction under those circumstances but found that "the accident was not proximately caused by the vessel. All of the events, participants, and instrumentalities involved in the accident were land-bound and unconnected to the vessel." *Id.* at 814. Therefore, the court held that the plaintiff's

claim did not come within admiralty jurisdiction.

From the foregoing and other cases, we conclude that a ramp leading to a dock is not within admiralty jurisdiction even though the dock itself is not permanently fixed but is floating free. Consequently, we determine that we have no jurisdiction in this action and **GRANT** the motion to dismiss (**Doc. No. 17**).

---

7. The Admiralty Extension Act has been interpreted by the Supreme Court as including not only injuries caused by the impact of the vessel but also by the acts of negligence by the vessel's crew while operating the vessel. *Gutierrez v. Waterman S. S. Corp.*, 373 U.S. 206, 210, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963).